IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RITA WISSERT** | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| **JOHN J. QUIGG,** | : | |
| **UPPER MERION TOWNSHIP,** | : | |
| **CHARLES ZDROGA,** | : | |
| **TOBY FISHER,** | : | |
| **MICHAEL BALLMAN,** | : | |
| **BOROUGH OF BRIDGEPORT, and** | : | |
| **MATT HANSEN** | : | NO. 06-3256 |

## MEMORANDUM AND ORDER

NORMA L. SHAPIRO, S.J.                                                                                                     April 25, 2008

   Plaintiff Rita Wissert ("Wissert") brought this action under 42 U.S.C. § 1983 for violations of her Fourth and Fourteenth Amendment rights.  She alleges that the individual defendants subjected her to excessive force, false arrest, false imprisonment and malicious prosecution; she alleges that the municipal defendants are liable for failure to train their agents and for violating Pennsylvania law.  This court has federal question jurisdiction.  28 U.S.C. § 1331.

   Following discovery, defendants filed motions for summary judgment; those motions will be granted in part and denied in part.

   **A.**   **Factual Background and Procedural History**

   This action arises out of incidents that occurred in the late hours of September 5, 2004. Plaintiff Rita Wissert was a passenger in a pickup truck driven by her then boyfriend, Morris

1

Southwick. While on patrol that evening, defendant State Trooper Quigg observed Southwick's truck driving erratically and attempted to pull him over but Southwick increased his speed and fled. Trooper Quigg radioed to the local dispatcher that he was in pursuit of Southwick's truck and requested assistance. Southwick drove to his apartment complex in Upper Merion, Pennsylvania, where he left the truck and ran from the scene. Trooper Quigg pursued Southwick on foot.

Wissert got out of the truck and walked to a nearby hill, adjacent to the apartment parking lot, where she sat and began to cry. As she sat and cried, defendant Upper Merion Police Officers Ballman and Fisher, who had responded to Trooper Quigg's request for assistance, approached Wissert and asked for identification. Wissert informed the officers that her identification was in the cab of Southwick's truck. When she attempted to retrieve her identification from the truck, Officers Ballman and Fisher restricted her from doing so. As Ballman and Fisher were attempting to restrain Wissert, defendant Bridgeport Police Officer Hansen arrived on the scene and assisted Officers Ballman and Fisher in subduing her.

The parties differ on what precipitated the physical struggle between Wissert and the officers. Wissert contends that when she attempted to comply with the officers' orders and retrieve her identification, the officers suddenly and without explanation violently restrained her. The officers aver that they did not know the nature of Wissert's involvement in the traffic stop and for their own safety restricted her access to the truck by blocking her with their bodies; at that point Wissert became highly irrational, abusive and combative.

Wissert alleges that in the course of restricting her access to the cab of the truck and placing her in handcuffs, Officers Ballman, Fisher and Hansenand falsely arrested her and used

excessive force . Defendant Charles Zdroga, an Upper Merion Police Sergeant, was the ranking Upper Merion officer on the scene. He did not have any physical contact with Wissert, but he personally observed and did not halt the alleged, false arrest, excessive force and false imprisonment so Wissert asserts those claims against him.

After restraining Wissert, the officers placed her in the back seat of a police car and awaited Trooper Quigg, who had apprehended Southwick. An unknown officer advised Quigg that Wissert appeared to be drunk. Quigg requested that the Upper Merion Police place Wissert in a holding cell pending a charge of public intoxication, purportedly for her own safety. Wissert spent the night in an Upper Merion Police Department cell and was released early the next morning.

Officer Hansen did not file a written report documenting the use of force although the Borough of Bridgeport Police Department required him to do so. Following commencement of this action, Borough of Bridgeport Police Chief Martyniuk reprimanded Hansen for failing to file a report. Chief Martyniuk did not undertake an investigation of the incident. Wissert also asserts claims against Upper Merion Township and the Borough of Bridgeport.

Defendant Quigg asserts qualified immunity and moves for summary judgment on the false arrest, malicious prosecution and false imprisonment claims against him. Upper Merion defendants Toby Fisher, Michael Ballman and Charles Zdroga (collectively, the "Upper Merion Defendants") assert qualified immunity and move for summary judgment on Wissert's false arrest and excessive force claims. Borough of Bridgeport Police Officer Matt Hansen asserts qualified immunity and moves for summary judgment on Wissert's claims for excessive force and false arrest. Defendants Upper Merion Township and Borough of Bridgeport move for

summary judgement.

    **B.    Discussion**

Summary judgment is appropriate if there are no genuine issues of material fact presented and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).   The court resolves all factual doubts and draws all reasonable inferences in favor of Wissert, the nonmoving party.  *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005), *cert. denied*, 546 U.S. 1094 (2006).

Wissert brought this civil rights action under 42 U.S.C. § 1983.  Section 1983 alone does not create any substantive rights, but rather creates a remedy for violations of the Constitution or federal law.  *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *Kneipp v. Tedder*, 95 F.3d 1199, 1203 (3d Cir. 1996).  To state a claim under § 1983, Wissert must demonstrate that defendants, acting under color of state law, deprived her of a right secured by the Constitution or the laws of the United States.  *Id.* at 1203.

    **1.    Excessive Force**

A claim that law enforcement officers have used excessive force in the course of an arrest, investigatory stop, or other seizure is analyzed under the Fourth Amendment "reasonableness" standard, not under a substantive due process standard.  *Graham v. Connor*, 490 U.S. 386, 395 (1989).  Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires balancing the "nature and quality" of the intrusion on the individual against the countervailing governmental interests.  *Id.* at 396.  The question is whether an official's actions are "objectively reasonable" in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation.  *Id.* at 397.

4

Although the issue of reasonableness in an excessive force claim is usually a question for the jury, a court may grant summary judgment if it concludes, after resolving all factual disputes in favor of the plaintiff, the officer's use of force was objectively reasonable under the circumstances. *Estate of Smith v. Marasco*, 318 F.3d 497, 516 (3d Cir. 2003).

Wissert asserts excessive force claims against Officer Hansen and the Upper Merion Defendants. Resolving all factual disputes in favor of Wissert, issues of material fact preclude a finding of summary judgment. Defendants assert that they used no more force than was necessary, but Wissert disputes their version of events and contends that defendants violently restrained her, in the absence of resistance on Wissert's part, with force that was objectively unreasonable under the circumstances. Whether the force employed in subduing Wissert was excessive and objectively unreasonable is one of fact that the jury must determine. Summary judgment will be denied.

### 2. False Arrest

Wissert asserts false arrest claims against Trooper Quigg, Officer Hansen, and the Upper Merion Defendants. The Fourth Amendment prohibits arrests without probable cause. *Berg v. County of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000). An actionable claim for false arrest requires proof that the arresting officers lacked probable cause to believe that she had committed the offense for which she was arrested. *Groman v. Township of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995). Probable cause to make an arrest exists when the arresting officers' knowledge at the time of the arrest is sufficient to warrant a reasonable officer to believe that an offense has been committed by the offending person. *Paff v. Kaltenbach*, 204 F.3d 425, 436 (3d Cir. 2000). Drawing all reasonable inferences and resolving all factual disputes in favor of Wissert,

5

defendants had probable cause to arrest Wissert. Her presence at the scene of Southwick's flight, her emotional state, and her insistence, against police orders, on reaching the cab of Southwick's truck provided the Upper Merion Defendants with probable cause to restrain her for officer safety. Wissert's struggle with the Upper Merion Defendants at the time Officer Hansen arrived at the scene provided probable cause for Hansen to aid the Upper Merion Defendants in restraining Wissert.

Based on Officer Hansen's and the Upper Merion Defendant's perception of Wissert's state when Trooper Quigg's returned from apprehending Southwick, Quigg had probable cause to arrest Wissert for public drunkenness. Title 18 Pa.C.S. § 5505 reads: "A person is guilty of a summary offense if he appears in any public place manifestly under the influence of alcohol or a controlled substance . . . to the degree that he may endanger himself or other persons or property, or annoy persons in his vicinity."

"Public place" is not defined in the public drunkenness statute, but is defined elsewhere in the Pennsylvania Crimes Code. Title 18 Pa.C.S. § 5902, the Pennsylvania prostitution statute, defines a public place as "any place to which the public or any substantial group thereof has access." *Commonwealth v. Meyer*, 431 A.2d 287, 289 (Pa. Super 1981) held "the ordinary meaning of access is the right to enter or make use of, the state or quality of being easy to enter" (internal quotations omitted). Section 5503, the Pennsylvania disorderly conduct statute, defines "public place" as including "highways, transport facilities, schools, prisons, **apartment houses**, places of business or amusement, or any premises which are open to the public" (emphasis added). Even gated communities have been held to be public places. In *Commonwealth v. Whritenour*, 751 A.2d 687 (Pa. Super. 2000), a man was found staggering on the street of a gated

community. The court cited the disorderly conduct statute in finding the gated community was a public place under the public drunkenness statute. Wissert argues that Quigg and the Upper Merion Defendants could not have had probable cause to arrest her because the parking lot where the police approached her was not a public place. The court disagrees; the apartment house parking lot was a "public place" under the public drunkenness statute.

Wissert further argues that public drunkenness is a summary offense not subject to arrest. However, when a summary offense involves a breach of the peace, or endangers property or the safety of any person present, arrest is warranted. *Commonwealth v. Neufer*, 264 Pa. Super. 553, 560 (Pa. Super. Ct. 1979). The officers present at the scene reasonably could have believed that Wissert was a danger to herself because of her erratic behavior. The Upper Merion's Defendants' description of Wissert's behavior gave Trooper Quigg probable cause to arrest Wissert for public drunkenness. Summary judgment will be granted as to all individual defendants on Wissert's false arrest claims.

**3. False Imprisonment**

Wissert asserts false imprisonment claims against the Upper Merion Defendants, who physically took her into custody and housed her in their facility, and against Trooper Quigg, who ordered her arrested. A false imprisonment claim for an arrest without probable cause violates the Fourth Amendment's guarantee against unreasonable seizure. If the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest. *Groman,* 47 F.3d at 636. Wissert's behavior provided probable cause to arrest her for public drunkenness. Whether that was sufficient to detain Wissert overnight is an issue the court does not reach since defendant officers are entitled to qualified

immunity for any false imprisonment.

A government official performing discretionary functions has qualified immunity from civil liability if the allegedly unlawful official action was objectively reasonable in light of clearly established rules. *See Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987). The court must decide: 1) whether the facts alleged show the officer's conduct violated a constitutional right; and 2) whether the right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The right allegedly violated must have been "clearly established" in a particularized and relevant sense; a reasonable official must understand that his or her actions violate that right. *Anderson*, 483 U.S. at 640. The unlawfulness must be apparent in light of pre-existing law. *Id.*

Here, there is a genuine issue of fact whether the officers violated Wissert's constitutional right to be free from false imprisonment; the court must decide whether, in light of clearly established law, the right should have been apparent. Although public drunkenness is a summary offense, not normally subject to arrest and detention, there are a number of precedents that supporting arrest and detention of an intoxicated person until she is no longer a danger to herself or others. *See, e.g., Commonwealth v. Neufer*, 264 Pa. Super. 553, 560 (Pa. Super. Ct. 1979) (arrest for public drunkenness appropriate; it would be "unconscionable" merely to issue a citation and release intoxicated person to resume a dangerous journey); *Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir. 1996) (police liable for releasing an intoxicated woman who was severely injured on her way home).

The arresting officers, reasonably believing Wissert to be intoxicated, were faced with the choice of releasing Wissert, in which case they might be subject to liability if she were injured, or detaining her for her own safety. There was no clearly established rule at the time of Wissert's

arrest providing that officers may not arrest a person they reasonably believe to be publicly intoxicated and a possible threat to herself; the officers are entitled to qualified immunity. Summary judgment will be granted defendants on Wissert's claims of false imprisonment.

### 4. Malicious Prosecution

Wissert asserts a malicious prosecution claim against Trooper Quigg. She must prove: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Marasco*, 318 F.3d at 521. Quigg argues that summary judgment is appropriate because Wissert cannot show that he initiated criminal proceedings without probable cause. Defendants had probable cause to arrest Wissert, but it does not follow that her arrest provided probable cause to prosecute Wissert for public drunkenness. Wissert contends that she was not intoxicated at the scene, but was highly emotional due to the ordeal she suffered that evening. Although Wissert's behavior provided probable cause to arrest Wissert, if Quigg or the other officers housing her that night learned after placing her in custody that she was not intoxicated, there would have been no probable cause for prosecuting her for public drunkenness. Whether there was probable cause to prosecute Wissert for public drunkenness is an issue of material fact that cannot be resolved by summary judgment.

### 5. Municipal Liability

Wissert asserts municipal liability claims against the Borough of Bridgeport ("Bridgeport") and Upper Merion Township ("Upper Merion"). Her claim against Bridgeport is

it failed properly to train its officers in the appropriate use of force, the use of handcuffs and the need for probable cause for arrest. Wissert argues such a failure to train amounts to deliberate indifference to the rights of citizens and conscious disregard for constitutional law. Wissert's claim against Upper Merion repeats that claim and asserts further that Upper Merion's failure to release or immediately arraign her for a summary offense constituted noncompliance with Pennsylvania law. Such noncompliance, Wissert argues, can be ascribed to the municipality's decision-makers and forms the basis for municipal liability.

      Wissert sues the municipalities under 42 U.S.C. § 1983. A plaintiff must prove that her rights were violated as a result of a municipal policy or custom of deliberate indifference to the rights of its citizens. *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1064 (3d Cir. 1991). To prove such a policy or custom, a plaintiff must "present scienter-like evidence of indifference on the part of a particular policymaker or policymakers." *Id.* at 1060-61. Alternatively, a plaintiff may establish that a course of conduct undertaken by the municipality, although not sanctioned by law, has become "so permanent and well settled" as to virtually constitute law. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Proof of the existence of an unlawful practice alone is not enough to sustain a § 1983 action; a plaintiff must also prove that "the municipal practice was the proximate cause of the injuries suffered" by establishing a "plausible nexus" or "affirmative link" between the practice and the specific deprivation alleged. *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). The inadequacy of police training may serve as the basis for municipal liability only where the failure to train "amounts to deliberate indifference to the right of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 387 (U.S. 1989).

    a.  Borough of Bridgeport

  Wissert contends Bridgeport, in failing to train its officers properly in the appropriate use of force and the need for probable cause for arrest, adopted a custom that is deliberately indifferent to the rights of the citizens with whom its officers come into contact.  She argues that although Bridgeport has a written policy against the use of force, the policy was ignored by its officers and Bridgeport failed to train its officers regarding the need for probable cause to make an arrest. The evidence Wissert offers to support these contentions consists of Officer Hansen and another non-defendant officer's statements.  In their depositions, the two officers stated they were not required to write a report on Wissert's arrest because: (1) it was a for traffic stop; and (2) it was to assist another department.  Hansen's Police Chief testified that a report should have been filed.  Following the institution of this lawsuit, no investigation of Officer Hansen's actions was instituted.

  Officer Hansen had probable cause to restrain Wissert, so failure to train in the need for probable cause did not cause any constitutional injury to her.  Wissert has failed to offer evidence that Bridgeport has a policy, practice or custom of failing to train its officers with regard to the use of force.  Wissert has pointed to no credible evidence, direct or circumstantial, that Bridgeport has allowed excessive force to become "so well settled" that it constitutes a policy, or that Bridgeport had any knowledge of prior acts of alleged excessive force so a fact finder could conclude it adopted or approved of such behavior.  The evidence Wissert cites to support her claim bolsters the contention that Officer Hansen was not aware of his duty to file a report following her arrest.  It is not reasonable to infer Officer Hansen had not been adequately trained in the use of force because he was unaware of his duty to file a report.  Wissert has failed to offer

sufficient evidence to sustain a claim against Bridgeport; summary judgment on that claim will be granted.

### b.     Upper Merion Township

Wissert argues that Upper Merion is liable on two distinct grounds: (i) it failed adequately to train its officers in the use of force and probable cause for arrest; and (ii) its overnight detention of Wissert violated Pennsylvania law and a knowing violation of state law gives rise to municipal liability.

As to failing to train its officers in the need for probable cause, the Upper Merion Defendants had probable cause to arrest Wissert, so failure to train in the need for probable cause did not cause any constitutional injury to her.  As to the failing to train in the appropriate use of force, Wissert argues: (1) the policy requiring reporting of use of force was ignored by the Upper Merion Defendants, who failed to file use-of-force reports; (2) Upper Merion Police Chief Fonock failed to investigate Wissert's arrest; (3) Wissert's expert concluded that Chief Fonock contributed to the Upper Merion Defendants' commission of constitutional violations by failing to investigate wrongdoing; (4) Sergeant Zdroga did not investigate Wissert's arrest; (5) Sergeant Zdroga was deliberately indifferent to the injuries inflicted by officers he supervised.

Sergeant Zdroga cannot bind the municipality because he is not a policymaker.  *See Monell,* 436 U.S. at 694.  Wissert offers no direct or indirect evidence that any Upper Merion policymaker countenanced constitutional violations.  Officers Ballman and Fisher's failure to file use-of-force reports is probative of the fact that they were inadequately trained on when to file reports; such a lapse is not indicative of a failure to train officers on the actual use of force.  It would not be reasonable for jury to infer a pattern or custom of excessive force from the officers'

failure to file such reports.  Chief Fonock's admission that he failed to investigate Wissert's arrest is not sufficient for a reasonable juror to find Fonock supported or knowingly ignored any officer's alleged mistreatment of citizens.  On summary judgment, a court may consider only evidence that would be admissible at trial. Fed. R. Civ. P.  56.   The legal opinions of Wissert's expert are not evidence.  Even drawing all reasonable inferences in favor of Wissert, she has not adduced sufficient evidence for a reasonable jury to find municipal liability against Upper Merion for failure to train.

In *Anela v. City of Wildwood,* 790 F.2d 1063 (3d Cir. 1986), the city of Wildwood, New Jersey was held liable for detaining six young women overnight for violating the city's anti-noise ordinance.  Three police officers had entered the leased home of the six plaintiffs and arrested them for loud radio-playing at around 11:15 in the evening.  Unable to post bond, the women were incarcerated until eleven o'clock the following morning.  The arrestees, in an action under 42 U.S.C. § 1983, contended that the City was liable because they were held overnight for violating an ordinance instead of being released with a summons as provided by New Jersey law.

The New Jersey Supreme Court, under the authority of the New Jersey Constitution, promulgated Rule 3:4-1(b), Rules Governing Criminal Practice (1985), which has the force of law.  It requires a person making an arrest without a warrant to take the arrestee to the nearest committing judge, and file a complaint forthwith, and cause either a warrant or a summons to issue. When minor offenses are charged, the arresting officers, after completing the post-arrest identification procedures, must release the arrestee unless a narrowly defined set of conditions

apply.[1]  The Court of Appeals found the women were arrested for a minor offense and none of the conditions applied.  Wildwood excused its behavior by arguing that it routinely detained persons overnight for minor offenses under a rule established by a Wildwood municipal judge.  Such rules, the city argued, are promulgated by the New Jersey Supreme Court and not within the control of municipal authorities.

The Court of Appeals held the New Jersey rule requiring release imposed a duty on Wildwood to issue summons for minor offenses and not imprison arrestees overnight.  *Id.* at 1067.  The City's routine noncompliance with the controlling rule could be ascribed to municipal decision makers and provide a basis for municipal liability.  *Id.*

Wissert argues that her arrest and subsequent detention for a summary offense contravened Pennsylvania law and gave rise to liability.  Like New Jersey, Pennsylvania has a rule of criminal procedure with the force of law requiring that a person arrested without a warrant shall be issued a summons and promptly released from custody as long as: (1) the arrestee poses no threat of immediate harm to herself or others; and (2) the officer has reasonable ground to believe that she will appear as required.  Pa. R. Crim. P. 441 ("Rule 441").  Upper Merion did not release Wissert promptly; it alleges that she was severely intoxicated which gave rise to a reasonable decision to hold her until such a time as she was no longer a threat to herself.  Upper

---

[1] The conditions listed by the rule are: (1) The person has previously failed to respond to a summons; (2) The officer has reason to believe that the person is dangerous to himself, to others or to property; (3) There is one or more outstanding arrest warrants for the person; (4) The prosecution of the offense or offenses for which the person is arrested or the prosecution of any other offense or offenses would be jeopardized by immediate release of the person; (5) The person cannot provide satisfactory evidence of personal identification; (6) The officer has reason to believe the person will not appear in response to a summons; or (7) The person demands to be taken before a judge.  *Anela*, 790 F.2d at 1066 n. 2.

Merion admits it did not attempt to contact anyone to come for Wissert.  It is disputed whether Wissert was intoxicated and for how long.

Rule 441 further states that when an arrestee is not promptly released, "she shall be taken without unnecessary delay before the issuing authority when available . . . where a citation shall be filed against the defendant."  It is undisputed that Upper Merion did not bring Wissert before a judge.  She was issued a summons by mail some weeks after she was released.  In his deposition, Sergeant Zdroga admitted he did not know whether an person arrested for public intoxication should be offered immediate arraignment or bail; he testified it was not something his department normally did.  Drawing all reasonable inferences in favor of Wissert, questions of fact remain; a jury could reasonably find municipal liability.  Summary judgment on the claim of municipal liability against Upper Merion will be denied.

An appropriate order will issue.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RITA WISSERT** | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| **JOHN J. QUIGG,** | : | |
| **UPPER MERION TOWNSHIP,** | : | |
| **CHARLES ZDROGA,** | : | |
| **TOBY FISHER,** | : | |
| **MICHAEL BALLMAN,** | : | |
| **BOROUGH OF BRIDGEPORT, and** | : | |
| **MATT HANSEN** | : | NO. 06-3256 |

## ORDER

AND NOW, this 25th day of April, 2008, after a hearing on March 27, 2008 at which counsel for all parties were heard, it is **ORDERED** that:

1. Defendant Quigg's Motion for Summary Judgment (paper no. 42) is **GRANTED IN PART AND DENIED IN PART.**

2. Defendants Upper Merion Township, Charles Zdroga, Toby Fisher and Michael Ballman's Motion for Summary Judgment (paper no. 52) is **GRANTED IN PART AND DENIED IN PART.**

3. Defendants Borough of Bridgeport and Matt Hansen's Motion for Summary Judgement (paper no. 54) is **GRANTED IN PART AND DENIED IN PART**.

4. Defendants' motions *in limine* to Preclude Evidence of Sexual Assault by a Police Officer in Plaintiff's Past (paper nos. 51 and 55) are **GRANTED** for the reasons stated on the record.

5. Defendants' motions *in limine* to Preclude Evidence to Suggest Plaintiff was not in a Public Place (paper nos. 49 and 57) are **DENIED AS MOOT** for the reasons stated on the record.

6. Defendants' motions *in limine* to Preclude Testimony of Plaintiff's Expert, Joseph Waters (paper nos. 50 and 56) are **GRANTED IN PART AND DENIED IN PART** for the reasons stated on the record.

7. Plaintiff's motion *in limine* to Preclude Evidence that an Ex-Boyfriend, Larry

Guinther, Filed a Complaint Against Plaintiff which was Dropped (paper no. 62) is **GRANTED** for the reasons stated on the record.

       8.      Plaintiff's motion *in limine* to Preclude the Testimony of Defendants' Expert Ronald H. Traenkle (paper nos. 72 and 73) **GRANTED IN PART AND DENIED IN PART** for the reasons stated on the record.

       9.      Plaintiff's motion *in limine* to Preclude Evidence of the Amount of Alcohol in Rita Wissert's Blood Stream and the Alcoholic Content of what she is Alleged to have Drunk (paper no. 63) is **DENIED** for the reasons stated on the record.

      10.     Plaintiff's motion *in limine* to Preclude Evidence that Plaintiff is an Unwed Mother who has Children from More than One Man (paper no. 61) is **GRANTED** for the reasons stated on the record.

      11.     The outstanding claims for trial in this action are:

          (a)    against defendants Hansen, Ballman, Fisher and Zdroga for excessive force;
          (b)    against Trooper Quigg for malicious prosecution; and
          (c)    against Upper Merion Township for a knowing violation of state law.

                                                        /s/ Norma L. Shapiro
                                                             S.J.